NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case No. 09-30579 |
| Monica Anna Thors | : | Chapter 7 |
| Debtor | : | |
| Monica Anna Thors | : | |
| Plaintiff(s), | : | |
| vs. | : | Adversary No. 10-1078 |
| Winners International Farm and Thomas Vernooy | : | **MEMORANDUM OPINION** |
| Defendant(s) | : | |

**APPEARANCES**

Attorneys for Plaintiff
Paul R. Melletz, Esquire
BEGELMAN, ORLOW & MELLETZ
411 Route 70 East, Suite 245
Cherry Hill, New Jersey 08034

Attorney for Defendants
William J. Markwardt, Esquire
KENT & MCBRIDE, P.C.
1040 Kings Highway North
Suite 600
Cherry Hill, New Jersey 08034

Monica Thors seeks damages for an alleged willful violation of the stay by Winners International Farm. ["WIF" or "the Farm"]  Ms. Thors owns, breeds, trains, and drives thoroughbred horses. She was boarding several of her horses at the WIF on August 6, 2009, the time she filed her bankruptcy petition. WIF promptly moved for stay relief, based on Ms. Thors' pre-petition default.  The court denied that motion on September 9, 2009, finding that the horses were critical to Ms. Thors's reorganization efforts.  WIF again moved for stay relief shortly thereafter, this time on the basis of post-petition default and on allegations that Ms. Thors was a disruptive tenant. Ms. Thors responded that her attorney had reached out to WIF to establish a mechanism for paying the rent and that WIF's farm manager, Thomas Vernooy, had engaged in a pattern of harassing her beginning in June of 2009. This court granted stay relief on December 3, 2009. The court also dismissed the case on February 2, 2010, but reinstated it on Ms. Thors's motion on March 11, 2012. While the record in the main case is considerably more baroque, these are undisputed and undisputable relevant facts.

On January 20, 2010, Ms. Thors filed a complaint seeking to reinstate the case, have Mr. Vernooy held in contempt for violating the stay, fraud, and misrepresentation.  After the procedural confusion settled, her attorney filed an Amended Complaint on July 15, 2010, focused exclusively on the alleged stay violations by WIF and Mr. Vernooy. The Amended Complaint alleged that Mr. Vernooy and WIF denied Ms. Thors and her horses the use of certain facilities on the farm, rented out space to which she was entitled, failed to clean and maintain the stalls she rented, refused rent even as they continually sent invoices for pre-petition rent, and traumatized the horses. WIF and Mr. Vernooy denied all of the allegations of stay violation.

After both a motion to dismiss the adversary proceeding and a motion for summary judgment, the court narrowed the issues to be tried: Whether between August 6, 2009 and

2

December 3, 2009 WIF rented out space to which Ms. Thors was entitled, and whether WIF sent her invoices for rent accrued prior to the petition date. The court also limited damages to those directly attributable to those particular alleged stay violations.

Ms. Thors did not present any evidence that WIF rented out stall space to which she was entitled. She presented testimony that WIF gave another tenant permission to share supplemental space that she described as an "office." She did not present any written documentation or any testimony, other than her own opinion, that established that she was contractually entitled to exclusive use of the described space. Mr. Vernooy testified that neither Ms. Thors nor any other tenants had such an exclusive right.

Ms. Thors did present several invoices that she testified were delivered to her during the period she was protected by the stay.[1] One invoice was for the period of 09/01/09 – 09/30/09 and the "total" listed at the bottom is $2,100, but in the upper right hand corner under "Account Status" it notes a prior balance of $7,300 and a "Payment Due" of $9,400. The second invoice was for the period of 10/01/09 – 10/31/09 and the total at the bottom is $3,000, and in the upper right hand corner it notes a prior balance of $7,300 and a payment due of $10,300. Ms. Thors testified that the invoices were delivered to her via an envelope tacked to a bulletin board in the stables, as was the ordinary course between these parties. She also presented a handwritten note explaining why the second invoice was for additional stalls.[2] That note was neither signed nor dated, but "Sept" appears in the margin.

WIF presented two invoices as well.[3] Those invoices were identical in every respect except they did not include any reference to pre-petition rents due. Mr. Vernooy testified that the invoices that Ms. Thors presented were not delivered to Ms. Thors until after her petition had

---

[1] P-1 and P-2
[2] P-3
[3] D-3

been dismissed and were presented in the context of an eviction proceeding. He claimed that the invoices that he presented, without the pre-petition debt reference, were the ones actually delivered to Ms. Thors during the relevant period.

Ms. Thors also presented two letters, dated September 21 and October 2, 2009 respectively, from her then attorney Ellen McDowell to WIF's then attorney Travis Richards.[4] Those letters claim that WIF was violating the stay, but do not reference any invoices including pre-petition rent.

The automatic stay created in 11 U.S.C. § 362 is the bedrock upon which bankruptcy protection is built. Accordingly, § 362(k)(1) provides that an individual injured by any willful violation of a stay shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages. The Debtor's burden under 11 U.S.C. § 362(k)(1) is to establish the creditor's actual knowledge of the bankruptcy filing and volitional action by the creditor.[5] As the Third Circuit has noted, "[i]t is a willful violation of the automatic stay when a creditor violates the stay with knowledge that the bankruptcy petition has been filed. Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which [sic] violate the stay be intentional."[6] When a willful violation of the stay has been demonstrated, compensatory damages are mandatory.[7] At the same time, § 362(k) requires a finding of actual injury.[8] For that reason, "the general rule of law

---

[4] P-7, P-8
[5] In re Atlantic Business & Community Corp., 901 F.2d 325, 329 (3d Cir. 1990)(interpreting the predecessor statue § 362(h)).
[6] Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 320 n.8 (3d Cir. 2003).
[7] Matter of Mullarkey, 81 B.R. 280, 284 (Bankr. D.N.J. 1987).
[8] Archer v. Macomb County Bank, 853 F.2d 497, 500 (6th Cir. 1988), *as cited in,* In re Hutchings 348 B.R. 847 (Bankr. N.D. Ala. 2006) (debtor's request for an award of damages pursuant to § 362(h) was denied where debtors were not injured by the alleged stay violation and the only so-called actual damages requested were for wages lost as a result of attending hearings and attorney's fees and costs incurred solely in connection with prosecution of action for damages.)

is that absent some out-of-pocket injury or some extreme and on-going misconduct by the creditor, fees and costs will not be allowed under §362(h)." [9]

Moreover, courts have overwhelmingly held that debtors have an obligation to attempt to mitigate damages prior to seeking court intervention.[10] If litigation is unnecessary to afford a debtor a remedy for credit's willful violation of the stay, then fees for commencing and prosecuting such an action are not compensable. [11]

In this case, there is no dispute but that WIF and Mr. Vernooy were aware of the bankruptcy filing: They filed a motion for stay relief on August 10, 2009. Ms. Thors alleges that they first violated the stay with an invoice dated August 31, 2009. Mr. Vernooy testified on direct that they were aware of the filing. Ms. Thors has clearly met her burden of establishing notice of the bankruptcy filing prior to the alleged stay violation.

Whether she has met her burden on establishing volitional action is less clear. The two sets of invoices present very different pictures. Ms. Thors testimony that she received the invoices that included pre-petition rent was credible in so far as it went, but is not supported by other documentary evidence: the contemporaneous letters from her attorney alleging stay violation did not in any way reference billing for pre-petition rent and the scrap of paper introduced as P-3 was undated. The explanation for the word "Sept" in the margin was unconvincing. Mr. Vernooy's testimony that the invoices with the pre-petition arrearages were sent only after Ms. Thors' bankruptcy was dismissed was at least facially plausible.

---

[9] Hutchings, 348 B.R. at 899 (quoting Aiello v Providian Fin. Corp., 231 B.R. 684,689 (Bankr. N.D. Ill. 1999)).
[10] See, e.g., In re Clayton, 235 B.R. 801 (Bankr. M.D.N.C. 1998)(debtor is under a duty to exercise due diligence in protecting and pursuing his rights and in mitigating his damages with regard to such violations); In re Risner, 317 B.R. 830 (Bankr. D. Idaho 2004)(In determining damages for willful violation of the stay, court must examine whether debtor could have mitigated); In re Rosa, 313 B.R. 1,(Bankr. D. Mass. 2004)(Debtors are indeed under a duty to mitigate their damages resulting from automatic stay violations).
[11] In re Grine, 439 B.R. 461 (Bankr. N. D. Ohio 2010).

Even if the court were able to find, by a preponderance of the evidence, that P-1 and P-2 were sent in violation of the stay, Ms. Thors has still failed to prove that she was actually damaged by them. The delivery of these invoices, even if delivered exactly as Ms. Thors testified, were apparently of so little consequence to Ms. Thors that they were not included in letters from her attorney alleging violation of the stay. They were not included in her own letter to WIF dated October 12, 2009.[12] Without some showing of actual damages, Ms. Thors cannot establish entitlement to recover for a stay violation based on the allegedly offending invoices.

Ms. Thors other allegations are in some ways the mirror image of her allegations about the invoices, in that she can establish the importance of those things but not the applicability of the stay. Ms. Thors clearly was upset at the time, and remains upset, that she was not permitted to use the so-called "office" and that she was not being permitted access to grass fields and the equine pool. She was clearly upset that the horse walker mysteriously refused to work while she was using it, and that the repairs to the stalls that she rented were insufficient to protect her horses. She was clearly upset that "someone" left a dead chicken hanging outside one of her stalls. The problem with those allegations is that Ms. Thors did not present any evidence that she was legally entitled to those things. She presented no lease or other writing that defined the parameters of her occupancy, she presented no evidence of what access other renters had or under what terms, she presented no evidence that either WIF or Mr. Vernooy were the parties responsible for things like the horse walker or the dead chicken. Without establishing a right to those things, she cannot establish a stay violation when they were taken away.

Additionally, Ms. Thors did not present evidence linking any of that alleged activity to actual damages. Ms. Thors tried repeatedly to present evidence that she suffered emotional damage from these alleged violations, but she did not support that testimony with expert opinion

---

[12] P-6

even when advised by the court that such expert testimony would be required under the case law. The court also notes from its own observations in the case that the types of things that she attempted to present to buttress her own testimony, the backwards spelling and speaking, happened throughout the case, not just in response to the alleged stay violations. Ms. Thors did not present sufficient evidence that the activities alleged caused even this sort of damage.

It is abundantly apparent from the testimony that Ms. Thors and Mr. Vernooy did not have a good relationship either before or after the bankruptcy filing. It is arguable that Mr. Vernooy wanted Ms. Thors removed as a tenant perhaps even more than he wanted to collect back rent. It is possible that Mr. Vernooy did his best to make continued occupancy by Ms. Thors and her horses uncomfortable. Unfortunately for Ms. Thors, the automatic stay is not an easy vehicle with which she may seek redress. Her burden of proof is such that she must establish more than being upset with the way she was being treated. The automatic stay can stop creditors from moving against property of the estate in an attempt to collect a pre-petition debt. It cannot compel creditors to like her.

Counsel for the Defendant should submit a form of judgment consistent with this opinion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: May 11, 2012